# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:

**CHRISTOPHER JOSEPH BROADBENT,**

**Debtor.**

**Bankruptcy Case No. 14-41269-JDP**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Monte C. Gray, GRAY LAW OFFICES, PLLC, Pocatello, Idaho, Attorney for Debtor.

Kathleen A. McCallister, Boise, Idaho, Chapter 13 Trustee.

### *Introduction*

In this Memorandum, the Court considers whether the proposed

chapter 13[1] plan of debtor Christopher Joseph Broadbent ("Debtor") should

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

be confirmed.  The trustee, Kathleen A. McCallister ("Trustee"), believes it

should not.  Dkt. No. 34.  The Court conducted an evidentiary hearing on

April 7, 2015, and invited the parties to submit additional briefing, Dkt.

No. 43, and the briefs were filed, Dkt. Nos. 45, 48.  The Court has

considered the testimony and parties' arguments, as well as the applicable

law, and through this Memorandum, sets forth its findings and

conclusions, and disposes of the confirmation issues.  Rules 7052; 9014.

## *Facts*

Debtor purchased a home in Blackfoot, Idaho, several years ago.  He

fell behind on his mortgage payments while attending vocational training

at a local university.  After finishing his training, Debtor took a job as a

diesel mechanic, the occupation for which he was trained.  He resumed

making regular mortgage payments but was faced with substantial

arrearages.

Primarily to deal with the delinquent mortgage payments, on

November 11, 2014, Debtor filed a chapter 13 petition.  Dkt. No. 1.  In his

original schedule I, Debtor listed his income, but did not include any

MEMORANDUM OF DECISION – 2

contribution from his live-in girlfriend, Cassandra.[2] *Id*.  He also included

his tax refund as income, but indicated that his year-to-date income for

2012 on the Statement of Financial Affairs ("SOFA") was "$0.00".  *Id*.

Finally, he disclosed that he paid $35 per month for real property taxes,

separate from his mortgage.  *Id*.

Debtor is a below-median income debtor according to his Form 22C,

Dkt. No. 7.  In his plan, Debtor proposed to make 36 monthly plan

payments of $300, to be used by Trustee to pay the mortgage arrears and

his attorney's fees, with any remaining funds to be distributed to his

unsecured creditors.  Dkt. No. 3.  The plan also proposed that Debtor

retain up to $1,621 of his annual tax refunds, and to remit amounts above

that sum to Trustee for distribution to creditors.

Trustee recommended that Debtor's proposed plan not be

confirmed because Debtor's income had recently increased due to his

completion of school and his new job, the zero year-to-date income on the

SOFA was inaccurate, that Debtor had miscalculated the balance due on

---

[2] The Court intends no disrespect, only clarity, by using first names.

MEMORANDUM OF DECISION – 3

the attorneys fees, and that Cassandra's income was not included in

schedule I and Form 22C.  Dkt. No. 23.

Debtor filed an amended chapter 13 plan which proposed to

increase his monthly payments to $370.  Dkt. No. 27.  It also resolved the

attorney fee issue, and omitted a plan provision allowing him to directly

pay real property taxes, since they are paid via an escrow funded by his

monthly mortgage payment.  *Id*. at ¶¶ 4.3 and 6.4.  It provided for an

approximately ten percent dividend to unsecured creditors.  Dkr. No. 27.

Along with the amended plan, Debtor also filed an amended Form 22C,

which included $1,346.67 in monthly income from Cassandra.  Dkt. No. 31.

However, even with Cassandra's income included, Debtor's household

income remained well below Idaho's median income.  *Id*.  Debtor also filed

amended schedules I and J reflecting his income and expenses, on which

he included a monthly income "contribution" from Cassandra of $200, but

increased the line-item expense for "food and housekeeping supplies"

from $350 to $550 per month.  Dkt. No. 32.  Debtor also eliminated the $35

monthly property tax payment from his schedule of expenses.  *Id*.

MEMORANDUM OF DECISION – 4

Although Trustee did not file a formal objection to confirmation, on February 17, 2015, she filed a recommendation that Debtor's amended plan not be confirmed.

Debtor's amended plan came before the Court for a confirmation hearing on April 7, 2015, at which time the parties presented evidence and testimony. Dkt. No. 43. Following the hearing, the Court invited the parties to file additional briefing, after the completion of which, the Court deemed the issues under advisement. At the confirmation hearing, and in briefing, the parties have focused, generally, on whether Debtor has proposed his amended plan in good faith, and specifically, whether Cassandra's income and expenses should be considered, as well as whether Debtor should be able to retain a portion of his tax refunds when he had not demonstrated his need for those funds to meet day-to-day expenses. *See* Dkt. Nos. 42, 48.

### *Analysis and Disposition*

Section 1325(a) of the Code lists the standards for confirmation of

MEMORANDUM OF DECISION – 5

chapter 13 plans.  One of those requirements is that the debtor's plan must have been "proposed in good faith and not by any means forbidden by law[.]"  § 1325(a)(3).

Trustee contends that Debtor's amended plan was not proposed in good faith for three reasons.  First, while Debtor included the $200 income contribution from Cassandra on his schedule I, he simply increased other expenses, namely food, on schedule J to effectively negate the additional income.  Second, Trustee contends that Debtor's plan is proposed merely to cure the mortgage arrears, and not to pay much of anything to unsecured creditors.  Finally, Trustee contends that Debtor should not be able to retain $1,621 in tax refunds each year, as he has not shown those funds are necessary to fund day-to-day expenses.

Debtor responds, generally, that all of the requirements for confirmation in § 1325(a), including good faith, have been satisfied.

A.    The Law of Good Faith under § 1325(a)

To determine whether a plan has been proposed in good faith, the

MEMORANDUM OF DECISION – 6

Court must examine the totality of the circumstances. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *Drummond v. Cavanaugh (In re Cavanaugh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000); *In re Stitt,* 403 B.R. 694, 700 (Bankr. D. Idaho 2008).  Whether Debtor's plan is proposed in good faith is a question of fact. *In re Stitt*, 403. B.R. at 700 (citing *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir. BAP 1997)).  Although it is Trustee who objected (though not formally) to confirmation, it is Debtor who bears the burden of establishing good faith. *Id.*

In reviewing the totality of the circumstances, the bankruptcy court should consider the following factors:

> (1) whether the debtor "misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 plan in an inequitable manner," *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982);

> (2) the debtor's history of filings and dismissals, *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1415 (9th Cir. 1985);

> (3) whether "the debtor only intended to defeat state court litigation," *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1445-46 (9th Cir. 1986); and

> (4) whether egregious behavior is present, *Colonial Auto Ctr. v.*

MEMORANDUM OF DECISION – 7

*Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir. 1997).

*In re Leavitt*, 171 F.3d at 1224.

In addition, the Ninth Circuit Bankruptcy Appellate Panel has set

forth additional non-exclusive factors which the bankruptcy court may

consider when adjudging the good faith of a debtor's proposed plan. *Fid.

& Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP

1987). Those factors[3] are:

> 1) The amount of the proposed payments and the amounts of the
> debtor's surplus;
>
> 2) The debtor's employment history, ability to earn, and likelihood
> of future increases in income;
>
> 3) The probable or expected duration of the plan;
>
> 4) The accuracy of the plan's statements of the debts, expenses and
> percentage of repayment of unsecured debt, and whether any
> inaccuracies are an attempt to mislead the court;
>
> 5) The extent of preferential treatment between classes of creditors;

---

[3] A court may employ the eleven *Warren* factors, the four *Leavitt* factors,
or some combination thereof. *Meyer v. Lepe (In re Lepe)*, 470 B.R. 851, 858 n.8 (9th
Cir. BAP 2012). It is crucial, however, that the Court not base its findings
regarding good faith on any single factor, but that it consider the totality of the
circumstances. *Id*.

MEMORANDUM OF DECISION – 8

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy [Code];

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court.  *In re Leavitt*, 171 F.3d at 1222-23; *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), *aff'd*, 120 F.3d 268 (9th Cir. 1997).

B.      Application of the Law to the Facts

Considering the *Leavitt* factors in this case, there is no evidence that

MEMORANDUM OF DECISION – 9

Debtor has had any prior bankruptcy case filings and dismissals, nor was there any state court litigation to which Debtor was a party. The Court also finds nothing to suggest that Debtor has behaved egregiously either before filing, or during, this case.

Applying the *Warren* factors relevant in this case, the Court finds there is no surplus of funds available to Debtor, and that the monthly payment of $370 he proposes in the amended plan seems to be all that he can manage based upon his current modest income. While his income might be expected to increase in the future, Debtor only recently completed his vocational training and immediately secured a position working in the field for which he was trained; any future increases in Debtor's income may be addressed through plan modification under § 1329(a). Furthermore, the term of the amended plan, 36 months, is in accord with § 1325(b)(4), and, as noted above, this is Debtor's first bankruptcy filing.

*Warren* suggests that the Court should examine Debtor's motivation and sincerity in seeking chapter 13 relief. The Court finds that Debtor has

MEMORANDUM OF DECISION – 10

been forthright about his motives.  He fell behind in his mortgage

payments while he was in school, at least in some part because he

encountered difficulties in promptly obtaining his GI Bill education

benefits.  When he graduated and obtained employment, he sought help in

chapter 13 to pay his mortgage lender to retain his home.  Utilizing a plan

to cure mortgage arrears and save the debtor's home is a classic – and

accepted – justification for a debtor's resort to chapter 13, assuming the

petition is filed, and the plan is proposed, in good faith.  *In re Metz*, 820

F.2d at 1497 ("courts have uniformly held that [§ 1322(b)(2)] allows the

debtor to 'cure' (i.e., pay or bring current) arrearages on the debt and

thereby reinstate the debt.")

There is no evidence that Debtor's debts and assets were

inaccurately reflected on his bankruptcy schedules and statements.

Trustee noted one inaccuracy on the SOFA – the 2012 year-to-date income

was listed as "0.00" – but Debtor indicated this was a simple mistake, as

corroborated by the fact that his correct income was accurately disclosed in

the contemporaneously-filed Form 22C.  *See* Exhs. 101, 104.  Thus, the

MEMORANDUM OF DECISION – 11

Court accepts that the original entry on the SOFA was a mistake, rather than an attempt to conceal information.

One of the *Leavitt* factors instructs the Court to consider whether Debtor "misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 plan in an inequitable manner." *In re Goeb*, 675 F.2d at 1391. Trustee argues that by not including Cassandra's total income in his schedule I, and not paying unsecured creditors any significant sums while paying the mortgage arrears in full, as well as retaining tax refunds, Debtor's plan runs afoul of this factor. The Court disagrees.

The Court concludes that it is not bad faith for Debtor to retain up to $1,621 of his annual tax refunds. Debtor does not intend to simply pocket these funds; instead, he has included one-twelfth of the tax refund as income each month, thereby effectively accounting for it in calculating his plan payments. And in the event Debtor receives tax refunds of more than $1,621 in any given year, the plan requires those funds to be remitted to Trustee. To the Court, this is a rational, and not an inequitable, approach

MEMORANDUM OF DECISION – 12

by Debtor to account for the use of the tax refunds.  Such proposal requires

some measure of discipline on Debtor's part, as well as poses some risk

should his refunds total less than $1,621.[4]  However, while Debtor bears

the risk, he does not stand to receive a windfall by virtue of the tax returns.

As such, the Court does not consider Debtor's proposed treatment of his

future tax refunds as evidence that he lacks good faith.

As noted above, Debtor's use of a chapter 13 plan to catch up missed

mortgage payments is a common, appropriate goal.  Because the arrearage

is significant, it is true unsecured creditors will not greatly benefit from

Debtor's monthly payments.  Even so, this is not, per se, bad faith, as the

amount paid to unsecured creditors through a chapter 13 plan is not solely

determinative on the issue of good faith.  *See Downey Sav. And Loan Assn. v.*

*Metz (In re Metz)*, 820 F.2d 1495, 1498 (9th Cir. 1987) ("The fact that

[debtor's] plan provides for no payment to unsecured creditors is not

---

[4] Should Debtor not receive at least $1,621 in tax refunds during the term
of the plan, his monthly income may be insufficient to fund the plan payments.
However, despite such risk, Trustee has not argued that the plan is not feasible
under § 1325(a)(6), and the Court also declines to criticize this plan provision.

MEMORANDUM OF DECISION – 13

sufficient to conclude that the plan was submitted in bad faith."); *In re*

*Goeb*, 675 F.2d at 1391 (the fact that the plan would pay unsecured

creditors only one cent on the dollar is relevant, but not determinative, on

the issue of good faith).

Finally, in judging good faith, *Warren* instructs the Court to examine

the accuracy of the debtor's statements about income and expenses, and

*Leavitt* requires an examination of whether the debtor has misrepresented

facts, unfairly manipulated the Code, or whether any inaccuracies were an

attempt to mislead the Court.  Trustee contends Debtor's choice to exclude

Cassandra's income on his schedule I and in computing plan payments is

strong evidence of bad faith.[5]  The Court disagrees.

Helpful law is hard to find on this point.  First and foremost,

---

[5] While not altogether clear, Trustee appears to argue that if Cassandra
had to contribute her income to Debtor's plan, then the amount that Debtor could
pay to creditors under his plan would necessarily increase.  However, no
evidence was presented concerning Cassandra's expenses, which would have to
be considered in any such equation.  Although the Court is mindful that Debtor
bears the burden on confirmation, the Court declines to simply assume that, if
Cassandra's net monthly income were included in the calculations, Debtor
would be able to make higher plan payments each month.

MEMORANDUM OF DECISION – 14

nowhere does the Code require that a live-in significant other's income be

counted in analyzing a chapter 13 plan, as is the case for a non-filing

spouse.  *See* 1325(b)(4)(A)(ii); schedule I; Form 22C; SOFA; *see also In re*

*Stansell*, 395 B.R. 457, 461 (Bankr. D. Idaho 2008).  Without some signal

from Congress, the Court declines to equate Cassandra's status in this case

with that of a non-filing spouse.

In addition, Trustee has not shown that Cassandra is otherwise

legally obligated to financially contribute to the joint household, nor are

any of the assets in play community property.  Because the cases she cites

involves such conditions, Trustee's authorities are inapposite.  Moreover,

the case law concerning treatment of the contributions of "significant

others" generally has arisen in the context of eligibility to be a chapter 13

debtor under § 109(e) in connection with whether the debtor has the

requisite "regular income" with which to fund a plan.  *See, e.g., In re*

*Murphy*, 226 B.R. 601, 604 (Bankr. M.D. Tenn. 1998) (noting that while the

Code does not specifically exclude any source of funding from the regular

income calculus, it does require that the source of income claimed by a

MEMORANDUM OF DECISION – 15

debtor must be regular and stable enough to fund a plan.)  Indeed, courts

have held that, absent a formal agreement to contribute, a significant

other's income should not be counted toward a debtor's regular income.

*See In re Heck*, 355 B.R. 813, 825 (Bankr. D. Kan. 2006); *In re Jordan*, 226 B.R.

117, 119-20 (Bankr. D. Mont. 1998); *In re Fischel*, 103 B.R. 44, 49 (Bankr.

N.D.N.Y. 1989).

Of course the issue here is not whether Debtor is eligible to be a

chapter 13 debtor under § 109(e).  Nevertheless, it seems to the Court that

if a non-spouse's contribution is not stable and regular enough to be

counted toward a debtor's eligibility for chapter 13, logic and consistency

dictate that it is also not worthy of inclusion on the debtor's schedule I and

factored into computing required plan payments.  Given this, it surely

cannot be said that a live-in significant other's income must always be

included on schedule I under every circumstance, and that it amounts to

bad faith for a debtor to do otherwise.

Since it was not per se bad faith for Debtor to exclude Cassandra's

total income in computing his plan payments, was it at least evidence of

MEMORANDUM OF DECISION – 16

bad faith to do so under these facts?  *See In re Gress*, 257 B.R. 563, 568

(Bankr. D. Mont. 2000).  The Court finds it was not.

Here, Cassandra routinely contributes $200 per month which she

uses to purchase groceries for household.  Both Debtor and Cassandra eat

that food.  Although it is unclear to what extent, perhaps the household

expenses are higher because she lives in the home.  However, the bulk of

the expenses must be paid by Debtor, as the homeowner and an occupant,

regardless of whether Cassandra lives in the house.

In addition, Debtor testified without contradiction that he does and

will not pay any of Cassandra's personal debts or non-household

expenses.  Even more significant, when Debtor was asked at the hearing to

speculate about what would occur if he were to ask Cassandra to

contribute cash to fund plan payments, Debtor testified that she would

likely "pack her bags."  While the situation might be different if Debtor

proposed to pay Cassandra's debts or non-household expenses, this is not

the case here.  *See In re Aprea*, 368 B.R. 558 (E.D. Tex. 2007) (debtor's

girlfriend made few and irregular contributions to the household, but his

MEMORANDUM OF DECISION – 17

plan proposed to pay many of her expenses and debts and the plan was held to be proposed in bad faith).  Given the facts, the Court concludes it is not an unfair manipulation of the Code for Debtor to exclude Cassandra's income from his plan payment computations.

### *Conclusion*

Debtor has carried the burden of showing that his proposed amended plan satisfies the requirements for confirmation.  In particular, as measured by the *Leavitt* and *Warren* factors, the Court concludes that Debtor's plan was indeed proposed in good faith.  As Trustee has not identified any other impediments to confirmation, counsel for Debtor and Trustee shall promptly submit an approved form of confirmation order.

Dated:  June 8, 2015

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 18